UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

DANIEL QUINONES,

                                        :

                    Plaintiff,                        07 Civ. 8633 (LBS)

                                          :

          -against-                         MEMORANDUM AND

                                         :           ORDER

NEW YORK STATE DIVISION OF PAROLE,

                                        :

                  Defendant.

                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

LEONARD SAND, District Judge:

For the following reasons, petitioner Daniel Quinones' petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254, based on ineffective assistance of counsel and on the fact

that voir dire minutes from his trial have been lost, is denied.

BACKGROUND

Daniel Quinones was convicted after a jury trial in New York State Supreme Court, New

York County of criminal possession of a controlled substance in the first degree (P.L. § 220.21

(1)). He was sentenced on February 14, 2002, to a term of fifteen years to life imprisonment.

Pursuant to the Rockefeller Drug Law Reform Act, on April 29, 2005, Quinones was re-

sentenced to a twelve year prison term. His conviction was unanimously affirmed by the

Appellate Division, and leave to appeal to the New York Court of Appeals was denied. People

v. Quinones, 36 A.D.3d 459 (1st Dep't), lv. denied, 8 N.Y.3d 926 (2007). Quinones was

released on parole in 2006.  He brings this habeas corpus petition alleging that he was held in

state custody in violation of his federal constitutional rights.

Quinones was arrested at around 5:50 p.m. on May 1, 1991, while fleeing from

Apartment 51 at 520 west 151st Street in upper Manhattan.  While frisking another individual

inside that Apartment, Sergeant Edward Browne noticed Quinones standing at the end of the

hallway within the apartment.  Sergeant Browne testified that Quinones was holding three

plastic bags of cocaine which he threw, one at a time, diagonally across the room to co-

defendant Miguel Diaz.[1]  Diaz then threw the bags out the apartment window.  Two bags of

cocaine were later recovered by other police officers on the street below.  Quinones attempted to

flee by running down a fire escape but was arrested by an officer awaiting him on the street.

Quinones' trial counsel went to visit the apartment in question before the trial began, but

he found Apartment 51 boarded up due to a fire in the apartment.  Counsel looked for an owner

or superintendent for the building, but was unable to locate anyone.  At trial, he cross-examined

Sergeant Browne about the layout of the apartment, and argued to the jury in summation that

there was a wall between Quinones and Diaz, making it impossible for Quinones to have seen

the drugs thrown as Browne described.

The Appellate Division rejected Quinones' argument of ineffective assistance of counsel,

holding that trial counsel made reasonably diligent efforts to enter the apartment and that this

failure to enter did not deprive Quinones "of a fair trial or cause him any prejudice." Id. at 460.

In addition, the court found that an inspection of the apartment's layout would not have

---

[1] Although petitioner attempts to attack Sergeant Browne's credibility extensively, it is worth pointing out that Justice Shea found Sergeant Browne to be a "convincing and credible witness" who "told a consistent story without contradiction or impeachment" at the hearing for defendants' suppression motion in this case. (Supp. Mot. Tr. at 162).

disclosed information of such significant impeachment value as to create a reasonable

possibility of a different verdict. Id.

The Appellate Division also ruled that Quinones was not entitled to summary reversal on

the grounds that the jury selection minutes were lost.  Id.  The court reasoned that the missing

minutes were attributable in large part to Quinones, who failed to appear for sentencing and was

returned on a bench warrant years later.  Id.


DISCUSSION

I.     Legal Standard

A state prisoner seeking federal habeas review of his state conviction is required to first

exhaust all remedies available to him in the state courts.  28 U.S.C. § 2254 (b)(1)(a). Exhaustion

requires alerting the state courts to the federal nature of the claim and raising the claim in the

state's highest court. See O'Sullivan v. Boerckel, 526 U.S. 838, 839-40 (1999); Jordan v.

LeFevre, 206 F.3d 196, 198 (2d Cir.2000).  Here, Quinones exhausted his state remedies by

raising all of his constitutional claims at all the appropriate times in state court. Since New

York's highest court has declined to review his appeal, Quinones enjoys no further right to

present them in state court.  28 U.S. C. § 2254 (c).

A state prisoner has one year from the date that his conviction became final in which to

file a petition for habeas relief in federal court. 28 U.S.C. § 2244(d)(1).  A state judgment

becomes final upon the conclusion of direct review.  28 U.S.C. § 2244(d)(1)(A).  The New York

Court of Appeals denied Quinones' leave to appeal on March 13, 2007.  People v. Quinones, 8

N.Y.3d 926 (2007).  His conviction, therefore, became final ninety days later on June 11, 2007.

Quinones has one year from then to file his habeas petition.  Thus his habeas application is timely.  28 U.S.C. §§ 2244.

A petition for habeas corpus relief shall not be granted on any claim "adjudicated on the merits" by the state courts unless the decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254 (d)(1).  A state court's decision is an "unreasonable "application" of established Supreme Court law if the state court identifies the correct legal principle from the Court's decision but unreasonably applies the principle to the facts of the prisoner's case. William v. Taylor, 529 U.S. 362, 412-13 (2000).  Habeas relief may also be granted if a state court's decision was contrary to or an unreasonable application of a reasonable extension of Supreme Court jurisprudence.  See Torres v. Berbary, 340 F.3d 63, 72 (2d Cir. 2003).


II.    Discussion

Ineffective Assistance of Counsel

Petitioner argues that despite being alerted by Quinones to the discrepancy between the actual layout of the apartment and the version presented by the prosecution, trial counsel never independently investigated and photographed the apartment.  Instead, counsel relied on the prosecution's photos of the apartment to discredit Sergeant Browne, the only witness at trial who actually saw Quinones holding the drugs.

In Strickland, the Supreme Court established a two-pronged test for determining whether a defendant's Sixth Amendment right to effective assistance of counsel was violated.  In order to prove such a violation, a convicted defendant must show (a) "that counsel's representation fell below an objective standard of reasonableness .... under prevailing professional norms," 466

4

U.S. 668, 669 (1984), and (b) "that the deficient performance prejudiced the defense," *i.e.,* "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.

Quinones' trial counsel attempted to visit the apartment with an investigator, but could not enter because it was boarded up due to a fire.  Further, counsel "was unable to locate the owner or superintendent of the building." (Opp. Br. at 15).  The trial court denied petitioner's §440 motion and held that although it was "true that if trial counsel had inspected the apartment, he could have been in a better position to challenge Sgt. Browne's testimony as to the layout for the apartment," the "standard for meaningful representation is based on reasonable competence, not perfect representation." (Id. at 16).  The appellate court affirmed, and held that "the record supports the motion court's detailed findings and conclusions," and specifically that "[t]rial counsel made reasonably diligent but unsuccessful efforts to obtain access to the crime scene." (Id. at 18).

The right to effective assistance of counsel includes having an attorney perform all reasonable and necessary investigations.  Strickland, 466 U.S. at 691. Prior cases have held that failing to investigate a crime scene at all can be deemed ineffective assistance of counsel, if the layout of a crime scene is relevant to a potentially successful defense and actual prejudice is shown.  See Thomas v. Kuhlman, 255 F. Supp. 2d 99, 107 (E.D.N.Y. 2003) ("Where the nature of the crime scene is material to the defense, counsel may be deemed ineffective for having failed to investigate it properly.").

However, the cases that petitioner cites are distinguishable from what occurred here, because in each of those cases, counsel was entirely unaware of the argument that could have been made, and thus did not raise it at trial.  Here, counsel was made aware of the existence of

the wall by the defendant, and in fact argued to the jury on cross-examination and in summation

that the wall blocked Officer Browne's view.[2]  Where the defendant has supplied the necessary

information, some courts have held that an ineffective assistance claim will not succeed.  See

United States v. Thomas, 2008 U.S. Dist. LEXIS 25838 (D.D.C. Mar. 21, 2008) ("While

counsel has a duty to investigate a case in order to effectively advise a client, the need to

investigate can be obviated where, for instance, the defendant can supply all the information

needed.").

We do not believe that the state trial and appellate court's decisions in this case were

"contrary to, or involved an unreasonable application of, clearly established federal law." 28

U.S.C. § 2254 (d)(1).  Under the standard set forth in Strickland, counsel must make "reasonable

investigations or to make a reasonable decision that makes particular investigations

unnecessary." Strickland v. Washington, 466 U.S. 668, 691 (1984).  We believe that counsel's

attempt to visit the apartment, with an investigator, and his efforts, although unsuccessful, to

find the building's owner, were "reasonable investigations."  Further, his use of the

prosecution's photographs for impeachment at trial, and his argument to the jury that a wall

blocked Sergeant Browne's view of Quinones, were effective enough that it was reasonable to

conclude that he did not need to make further inquiries.  Counsel also successfully used his

knowledge about the layout of the apartment to object to the introduction of the prosecution's

diagram of the apartment layout.[3]  Last, it is worth noting that the significance of the layout of

the apartment was not clear until midway through the trial, as both the prosecution and the

defense's opening statements focused on errors made in the police paperwork documenting this

---

[2] Trial counsel argues in summation that Sergeant Browne was a "liar" and that his testimony was "refuted by the facts" because if he "looked down the hallway, what he would have seen would be this wall." (Tr. at 492, 500).
[3] Counsel also filed a suppression motion before the trial, an initially successful §330 motion for a new trial after the trial concluded, and effectively cross-examined witnesses and gave opening and closing statements during Quinones' trial.

case, not on Sergeant Browne's ability to see Quinones.  The significance of a different

photograph was not fully apparent until the arresting officer testified that he could not recall

where he was standing when he took the photograph which was received in evidence. (Pet. Br. at

34).  We hold that the state court's conclusion that Quinones's counsel's performance met the

requisite standard for effective assistance of counsel is not an unreasonable application of

established federal law.


Missing Voir Dire Transcript

Next, Quinones argues that his conviction should be vacated because his due process

rights to a fair appeal were violated because the voir dire transcript from his trial was missing.

A reconstruction hearing revealed that these minutes were hopelessly lost and that no living

party had any recollection of the jury selection.  The Appellate Division, however, found that

the loss was attributable in large part to Quinones (who had failed to appear for sentencing and

was returned on a bench warrant years later) and rejected his argument that the missing

transcripts were grounds for a summary reversal.

Jury selection is a critical stage of trial because it implicates a wide array of fundamental

rights. Gomez v. U.S._, 490 U.S. 858, 876 (1989).[4]  Appeals must, therefore, comply with the

demands of the Due Process and Equal Protection Clauses of the U.S. Constitution.  Evitts v.

Lucey, 469 U.S. 387, 393 (1985).   This means that a criminal defendant must have the

minimum safeguards necessary to make their appeal "adequate and effective." Smith v.

---

[4] Reversible due process violations may arise from statements to the venire or the selected jurors by the prosecutor or the court. U.S. v. Lord, 565 F.2d 831, 836-37 (2d Cir. 1977).   Jury selection also gives rise to many non-constitutional New York State law issues that may require reversal, such as the violation of the defendant's statutory right to presence at sidebar voir dire of prospective jurors; errors in granting or denying challenges for cause; and conducting a portion of voir dire in the absence of defense counsel.  In addition, the trial judge may have utilized the voir dire proceeding to announce decisions on motions or other pretrial rulings that might affect trial fairness.

<u>Robbins</u>, 528 U.S. 259, 276-77 (2000).   Thus the state must provide the poor with a record of

"sufficient completeness' to permit proper consideration of his claims.  <u>Mayer, v. City of</u>

<u>Chicago</u>, 404 U.S. 189, 193 (1971).  This does not mean a verbatim transcript of the entire

proceedings.  <u>Id</u>.  What is constitutionally impermissible is the total denial of a transcript based

on indigency.  <u>Griffin v. Illinois</u>, 351 U.S. 12, 18 (1956).

       In <u>Norvell v. Illinonis</u>, the Supreme Court declined to extend <u>Griffin</u> to cases where the

transcript was unavailable due to the death of the court reporter.  373 U.S. 420, 424 (1963).

Instead, the Court held that practical accommodations must be made.  <u>Id</u>.   This means that

alternative methods of reporting trial proceedings are permissible if they place an equivalent

report before the appeals court.  <u>Mayer</u>, 404 U.S. at 194.  Here, the reconstruction hearing

concluded that the voir dire minutes were hopelessly lost.  The trial also occurred years earlier,

and as a result, petitioner was unable to remember any of the specifics of the voir dire and the

presiding judge had no recollection of the proceedings.  Thus, Quniones was deprived of an

'equivalent report of the events at trial' in preparation for his appeal.

       However, the Second Circuit also requires a showing of prejudice.  In order to prevail on

a habeas claim that the Appellate Division infringed upon the right to a fair appeal the plaintiff

"must show prejudice resulting from the missing or incomplete transcript."  <u>Santiago v.</u>

<u>Coughlin</u>, 107 F.3d 4, 5 (2d Cir. 1997) (quoting <u>Godfrey v. Irvin</u>, 871 F.Supp. 577, 584

(W.D.N.Y.1994); <u>see</u> <u>United States ex rel. Cadogan v. LaVallee</u>, 428 F.2d 165, 167 (2d

Cir.1970); <u>United States ex rel. Hunter v. Follette</u>, 307 F.Supp. 1023, 1025 (S.D.N.Y.), <u>aff'd</u>,

420 F.2d 779 (2d Cir.1969).  Mere speculation of possible prejudice resulting from a missing or

incomplete transcript is not enough.  <u>Godfrey</u>, 871 F.Supp. at 584.  What is required is, at a bare

minimum, "some modicum of evidence to support" the claim that "the missing portions of the transcript reflect reversible error." Id.

Quinones did not give any indication of any prejudice he suffered from the missing transcript. Instead, his memos suggest possible, not actual harm. And it is relevant that this delay was caused in large part by Quinones himself. Finally, contrary to Quinones' claim, there is no clearly established Supreme Court precedent holding that a federal habeas petitioner's right to a complete appeal is violated solely because part of the trial transcript is lost and cannot reconstructed. As a result, the fact that the voir dire minutes are missing does not constitute a reversible error because there is no showing of actual prejudice suffered.

CONCLUSION

For the following reasons, Daniel Quinones' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 based on ineffective assistance of counsel and lost voir dire minutes is denied.

Dated: June 2, 2008
       New York, New York

                                    SO ORDERED.

                                    LEONARD SAND
                                    U.S.D.J.